UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
CIERRA CHRISTINA R.,

                Plaintiff,        REPORT & RECOMMENDATION
                                        7:25-cv-00566-KMK-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In April of 2022, Plaintiff Cierra Christina R.[1] applied for Disability Insurance Benefits and Supplemental Security Income benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). Presently pending is Plaintiff's motion for judgment on the pleadings. (Docket No. 11).

This case was referred to the undersigned for a report and recommendation on October 17, 2025. For the following reasons, it is

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

recommended that Plaintiff's motion should be granted, and this matter should be remanded for further proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on April 25, 2022, alleging disability beginning April 8, 2020. (T at 10, 320-22, 323-332).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on May 22, 2023, before ALJ Seth Grossman.  (T at 58-76).  Plaintiff appeared with an attorney and testified. (T at 61-71, 73-74).  A further hearing was held on January 29, 2024. (T at 77-95). Plaintiff appeared with her attorney and testified. (T at 80-88, 90-91). The ALJ also received testimony from April Rosenblatt, a vocational expert. (T at 88-89, 91-93).

### B.    ALJ's Decision

On April 1, 2024, the ALJ issued a decision denying the applications for benefits. (T at 7-27).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 8, 2020 (the alleged onset date).  (T at 13).  The ALJ determined that Plaintiff meets the insured status

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

requirements of the Social Security Act through December 31, 2025 (the date last insured). (T at 13).

The ALJ concluded that Plaintiff's left eye blindness, depression, anxiety, and posttraumatic stress disorder were severe impairments as defined under the Act. (T at 13). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b) and 416.967 (b), except that she is limited to simple tasks. (T at 15).

The ALJ concluded that Plaintiff could not perform her past relevant work. (T at 21). However, considering Plaintiff's age (26 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 219).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits

for the period between April 8, 2020 (the alleged onset date) and April 1, 2024 (the date of the ALJ's decision). (T at 21-22).

On November 22, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on January 21, 2025. (Docket No. 1).  Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law, on July 7, 2025. (Docket Nos. 11, 12).  The Commissioner interposed a brief in opposition on September 5, 2025. (Docket No. 13).  Plaintiff submitted a reply memorandum of law on September 26, 2025. (Docket No. 14).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

6

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises several challenges to the ALJ's decision. Fundamentally, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed, which, she contends, undermines the RFC determination regarding her physical and mental functioning.  The Court will address each aspect of Plaintiff's argument in turn.

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

### A. Physical Functioning

Dr. Silvia Aguiar performed a consultative examination in June of 2022. She diagnosed left eye blindness, history of anemia, and asthma. (T at 1254). Dr. Aguiar opined that Plaintiff should avoid smoke, dust, respiratory irritants, and other respiratory irritants. (T at 1254). She assessed marked impairment in Plaintiff's ability to perform activities that require visual acuity and visual depth. (T at 1254).

In July of 2022, Dr. B. Stouter, a non-examining State Agency review physician, noted that Plaintiff had limited left acuity, field of vision, and depth perception due to left eye vision loss. (T at 107). Dr. Stouter also opined that Plaintiff should avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (T at 107-108).

In September of 2022, Dr. Lorraine Tosiello, a treating physician, wrote a letter stating that Plaintiff had "poorly controlled asthma," which was "exacerbated by environmental allergens." (T at 1579).

In January of 2023, Dr. D. Schwartz, another State Agency review physician, concluded that there was insufficient evidence to determine Plaintiff's RFC. (T at 138). Dr. Schwartz "suspected" that Plaintiff's visual acuity in her left eye was "impaired less than 20/200" and recommended a consultative examination to assess Plaintiff's vision. (R. 138).

In March of 2023, Jozefa Cheman, a treating nurse practitioner, completed a general medical report.  NP Cheman diagnosed left eye blindness, asthma, post-traumatic stress disorder, and depression. (T at 1581). NP Cheman opined that Plaintiff was limited to occasional exposure to humidity, wetness, and pulmonary irritants and need to avoid extremes of temperature. (T at 1585).

Plaintiff challenges the ALJ's consideration of the medical opinion evidence related to her visual impairment and asthma.

Regarding vision, the ALJ recognized Plaintiff's left eye blindness as a severe impairment. (T at 13).  The ALJ's RFC determination references the lack of vision in the left eye, but states that Plaintiff has normal vision in her right eye and does not incorporate any limitations arising from Plaintiff's

left side blindness. (T at 15).  The ALJ explained that he was limiting Plaintiff to light work "to minimize dangerous situations or activities which might exacerbate her symptoms." (T at 16).

Addressing Dr. Aguiar's conclusion that Plaintiff had marked impairment in her ability to perform activities that require visual acuity and visual depth (T at 1254), the ALJ found that the consultative examiner had "not adequately distinguish[ed] between [Plaintiff's] left eye vision compared to her right eye vision." (T at 18).

The Court finds the ALJ's consideration of Plaintiff's visual impairments is inadequate.  Here's why.

The ALJ faulted Dr. Aguiar for failing to "adequately distinguish" between Plaintiff's left eye vision and right eye vision. (T at 18).

The ALJ erred, however, by failing to adequately explain the dramatic dichotomy he drew between the two eyes in (apparently) finding that Plaintiff's left eye blindness had no impact on her ability to perform tasks requiring visual acuity and visual depth.

Although, the ALJ believed he had accounted for Plaintiff's left-side blindness by limiting her to light work, it is not clear why and how this is so, especially given Dr. Aguiar's assessment of marked impairment in

11

Plaintiff's ability to perform activities that require visual acuity and visual depth.

In addition, the ALJ failed to address Dr. Schwartz's request for consultative examination to assess Plaintiff's vision. (R. 138).  The Commissioner defends this omission by noting that Dr. Schwartz "suspected" that Plaintiff might not be completely blind in her left eye. The physician's suspicions, however, are less important than his conclusion that the record needed further development and a functional assessment regarding Plaintiff's vision.

The ALJ erred by reaching an RFC determination, while discounting medical opinion evidence regarding Plaintiff's vision, without a functional assessment expressly addressing the impact of Plaintiff's left-side blindness on her ability to perform work-related activities.

This is not the sort of situation where the ALJ could permissibly render a "common sense" assessment of a "relatively minor" impairment without the benefit of a supporting expert medical opinion.

Rather, "[t]he ALJ's findings amounted to an improper substitution of his 'own expertise or view of the medical proof [in place of] any competent medical opinion….'" *Joseph N. v. Kijakazi*, No. 20-CV-1690L, 2022 WL

268821, at *3 (W.D.N.Y. Jan. 28, 2022)(quoting *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)).

An ALJ may not substitute "common-sense" for medical opinion evidence in a case, as here, that presents "complex medical findings." *Shaw v. Kijakazi*, No. 20-CV-5123 (JLC), 2021 WL 3524101, at *12 (S.D.N.Y. Aug. 11, 2021)(citations omitted); *see also Thomas v. Saul*, No. 19-CV-6990 (MKV) (RWL), 2020 WL 5754672, at *9 (S.D.N.Y. July 24, 2020)(duty to develop the record remains "even where the ALJ has access to treatment notes, test results, and other medical history"); *Vellone on behalf of Vellone v. Saul*, No. 20-CV-261 (RA), 2021 WL 2801138, at *2 (S.D.N.Y. July 6, 2021).

A remand, therefore, is recommended for further development of the record and reconsideration of the evidence concerning the impact of Plaintiff's visual impairment on her ability to perform work-related activities.

Plaintiff also challenges the ALJ's failure to incorporate environmental restrictions into the RFC.  The Court finds no reversible error as to this aspect of the ALJ's decision.

A consultative examiner (Dr. Aguiar), State Agency review physician (Dr. Stouter), and two treating medical providers (Dr. Tosiello and NP

Cheman) assessed limitation in Plaintiff's ability to be exposed to respiratory irritants. (T at 107-108, 1254, 1579, 1585).

The ALJ recognized that Plaintiff's asthma was a medically determinable impairment but found that it had no more than a minimal effect on her ability to perform work-related activities and was, therefore, a non-severe impairment. (T at 13).

The ALJ explained that he had accounted for this non-severe impairment by limiting Plaintiff to light work "in order to minimize dangerous situations or activities which might exacerbate her symptoms." (T at 16).

In support of this conclusion, the ALJ noted that the treatment record generally described Plaintiff's asthma as "mild" and documented normal lung function during the period at issue, with only sporadic symptoms. (T at 13, 441, 527, 649, 659, 667, 900, 1319, 1343, 1348, 1377, 1378, 1419, 1423, 1425, 1440, 1448, 1451, 1460, 1659).

Although the Court is not necessarily persuaded that the ALJ's analysis is correct, the representative occupations identified by the vocational expert, and adopted by the ALJ at step five of the sequential evaluation, do not require exposure to respiratory irritants. (T at 21-22).

As such, any error as to this aspect of the ALJ's decision is harmless and a remand on this ground is not recommended. *See Crumedy v.*

14

*Comm'r of Soc. Sec.*, No. 1:16-CV-1261 (GTS), 2017 WL 4480184, at *7 (N.D.N.Y. Oct. 6, 2017)("Therefore, any omission from the RFC of a restriction related to asthma would at most be harmless error because the inclusion of such a limitation would not alter the validity of the Step Five finding and the ultimate conclusion of non-disability."); *see generally Akey v. Astrue*, 467 F. App'x 15, 17 (2d Cir. 2012) ("The ALJ's failure to include the limitation to unskilled and semi-skilled work is harmless because the only jobs the vocational expert identified were unskilled or semi-skilled.").

### B. Mental Functioning

Dr. Eleanor Murphy performed a consultative psychiatric evaluation in June of 2022. She diagnosed panic disorder without agoraphobia; generalized anxiety disorder; posttraumatic stress disorder; and major depressive disorder (recurrent, moderate). (T at 1306).

Dr. Murphy opined that Plaintiff had no limitation with respect to understanding, remembering, or applying simple instructions; mild impairment as to complex instructions; mild limitation in using reason and judgment to make work-related decisions; moderate impairment in social interaction; no limitation with respect to sustaining concentration and performing at pace; moderate limitation as to sustaining an ordinary routine

and regular attendance; and moderate impairment in regulating emotions, controlling behavior, and maintaining well-being. (T at 1306).

In December of 2023, Victoria Miller, a psychiatric-mental health nurse practitioner, completed a psychiatric medical report and medical source statement.  NP Miller reported that Plaintiff had been treating weekly since September of 2016. (T at 1642).  She diagnosed major depressive disorder (recurrent, moderate), post-traumatic stress disorder (chronic), generalized anxiety disorder, and panic disorder. (T at 1642).

NP Miller opined that Plaintiff was "unable to function appropriately in work settings." (T at 1644).  She found marked impairment in Plaintiff's ability to understand, remember, and carry out instructions; marked limitation in her capacity for social interaction; and marked impairment with respect to responding appropriately to usual work situations and changes in a routine work setting. (T at 1646-47).

The ALJ recognized Plaintiff's depression, anxiety, and posttraumatic stress disorder as severe impairments, but assessed no limitation as to Plaintiff's ability to understand, remember, or apply information; mild impairment as to social interaction; moderate limitation with respect to concentrating, persisting, or maintaining pace; and mild impairment in adapting or managing herself. (T at 13-14).

The ALJ accounted for Plaintiff's mental impairments by limiting her to work involving "simple tasks." (T at 15). In making this determination, the ALJ found Dr. Murphy's opinion only "somewhat persuasive" and considered NP Miller's report "not persuasive." (T at 19-20).

For the following reasons the Court finds that the ALJ's assessment of Plaintiff's mental functioning should be revisited on remand.

First, although the ALJ referenced NP Miller's status as a treating provider in passing, he gave insufficient consideration to NP Miller's long-term (seven year) treating relationship.

The Second Circuit has long recognized the importance of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule is no longer in effect, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the

new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8-9 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)); *see also* A*costa Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502KMWKHP, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022), at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No.

18

2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Second, in finding that Plaintiff had only mild impairment in her ability to interact with others (and in declining to incorporate any social limitations into the RFC), the ALJ erred by failing to consider the significant consistency between the opinions of the treating and consulting professionals, both of whom assessed at least moderate impairment in this domain. (T at 1306, 1647). *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Third, the ALJ overrated the relevance of Plaintiff's ability to maintain appropriate attendance and affect during periodic (weekly or monthly) encounters with supportive mental health professionals.

19

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, No. 17 CIV. 6875 (LTS) (HBP), 2019 WL 2453343, at *13 (S.D.N.Y. Feb. 19, 2019)*, report and recommendation adopted sub nom. Primo v. Comm'r of Soc. Sec.,* No. 17 CV 6875-LTS-SLC, 2021 WL 1172248 (S.D.N.Y. Mar. 29, 2021)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.,* 729 Fed. Appx. 119, 121 (2d Cir. 2018) (decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Further, while the treatment notes document Plaintiff as presenting with a cooperative attitude and appropriate engagement at medical appointments, they also describe a person suffering from anxiety, depression, inability to get out of bed, insomnia, and bedwetting. (T at 488, 490, 502, 505, 1099, 1105-06, 1111, 1113-17, 1125, 1133-34, 1303-07,

20

1314, 1347, 1352-53, 1409, 1435, 1438, 1490, 1495, 1508, 1511-12, 1546, 1558, 1642-47, 1668, 1671-72, 1677-79). *See Stacey*, 799 F. Appx. at 10 (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

### C.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).   Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

Given the deficiencies in the ALJ's analysis related to Plaintiff's vision and mental functioning, it is recommended that this case be remanded for further proceedings.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) should be GRANTED, and this case should be remanded for further proceedings pursuant to sentence four of section 405 (g) of the Social Security Act.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See also* Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the District Judge. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP*

*v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010).

Dated: December 1, 2025

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

23